UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 05-326 (DSD/JSM) |
| Plaintiff, | |
| | REPORT AND RECOMMENDATION |
| v. | |
| BERVIN LASHON GRADY, | |
| Defendant. | |

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on for hearing before the undersigned upon defendant's Motion to Suppress Evidence Obtained as a Result of Searches and Seizure [Docket No. 14] and Motion to Suppress Statements [Docket No. 15].

Assistant United States Attorneys Elizabeth Peterson and Andrew Winter appeared on behalf of the Government; James Ostgard appeared on behalf of defendant Bervin Lashon Grady who was personally present. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Based upon the pleadings, the pre-hearing and post hearing submissions, and testimony taken from Officer Michael Hentges and defendant, it is recommended that defendant's Motion to Suppress Evidence Obtained as a Result of Searches and Seizure [Docket No. 14] and Motion to Suppress Statements [Docket No. 15] be **DENIED**.

# I. FACTUAL BACKGROUND

## A. Testimony of Officer Michael Hentges

Officer Michael Hentges, City of Minneapolis Police Department, testified at the hearing that on September 6, 2005, he was assisting with surveillance in North Minneapolis of a known drug dealer, Tremaine Dickens ("Dickens"). There were 8 to 10 officers participating in the surveillance and the officers were in constant communication with each other. The officers noticed two other individuals get into an automobile with Dickens, drive around the block, and then get out a short time later. According to Officer Hentges, the officers then observed an individual, identified as defendant Bervin Lashon Grady ("Grady"), get into the automobile with Dickens, go around the block in the vehicle, and then get out a short distance from the location where he entered automobile. The police officers, based on their experience, believed that Dickens had engaged in drug transactions. However, Officer Hentges stated that he and the other officers could not visually determine if a drug transaction had occurred between Dickens and Grady within the vehicle.

Officer Hentges was asked by Officer Kurt Radke to approach Grady and ask him what had occurred. Officer Hentges stated that he approached Grady at 4:00 p.m. while it was still light out. He testified that he turned his truck north on Oliver Avenue from 27th Avenue and observed a man matching Grady's description on the west side of Oliver Avenue heading south. He then parked his unmarked vehicle on the wrong side of the street, got out the vehicle, and began approaching Grady. According to Officer Hentges, he was wearing a windbreaker with the words "police officer" printed on the front. As Officer Hentges was approaching Grady, he put his hands over his head and said he had a "clip" on him. Officer Hentges testified that when he first approached

2

Grady he said nothing to Grady, did nothing to intimidate Grady, and had no gun drawn. In addition, Officer Hentges said that there was no weapon visible on his person, and no other officers were present. Believing that Grady had a gun magazine in his pocket, Officer Hentges asked Grady if he had anything else on him. Grady responded that he had some "E", which Officer Hentges interpreted to mean the drug Ecstasy.

Subsequently, other officers in a squad car came to the scene and Grady was placed under arrest. Grady was then subjected to a pat-down search. During the search, Officer Hentges discovered an ammunition magazine containing .22-caliber ammunition in Grady's back pocket, and Ecstasy in Grady's front right pocket.

Following the arrest and search, Grady was his rights under Miranda v. Arizona, 384 U.S. 436 (1966) and he gave a taped statement.

### B.    Testimony of Defendant Bervin Lashon Grady

Grady testified at the hearing that he had been riding with Dickens on September 6, 2005, and that Dickens was his drug source. Grady claimed that after he got out the automobile with Dickens and walked straight on Oliver Avenue, Officer Hentges got out of his vehicle, had his gun drawn, and moved quickly into one of the yards of the houses that Grady was walking towards. In addition, Grady testified that he became aware of other vehicles rapidly moving toward his location and believed that the police were conducting a raid on one of the houses near to him. Grady stated that as he crossed the street and walked towards his mother's house, the police officers drew their guns on him and forced him into a police squad car, cuffed him and then searched his pockets. Grady testified that at no time did he voluntarily state to the police that he had any contraband on his person. Rather, according to Grady, it was only after he was

3

searched and the officers discovered the ammunition and drugs in his pocket, that he admitted that he was carrying a banana clip and Ecstasy.

## II. ANALYSIS

### A.  Motion to Suppress Evidence

Grady argued that the evidence seized from him should be suppressed, as it was not the product of a valid arrest. The Government argued that Officer Hentges had not seized Grady for Fourth Amendment purposes when Grady admitted that he had a gun clip and Ecstasy on his person. The Government also asserted that once Officer Hentges learned from Grady that he was carrying gun ammunition and drugs, Officer Hentges had an articuable suspicion that Grady was armed and dangerous, and had the right to do a limited search of Grady to discover if he had any weapons on his person.

This Court concludes that Grady's motion to suppress should be denied. First, in examining the conflicting testimony of Officer Hentges and Grady, this Court gives the credibility of Officer Hentges's testimony more weight. Second, based on Officer Hentges's testimony, the facts surrounding Officer Hentges's approach of defendant evidence a consensual encounter that does not implicate the Fourth Amendment. Third, once Officer Hentges had Grady's admission that he had weapons ammunition and Ecstasy on his person, Officer Hentges had probable cause to not only arrest Grady and conduct a search incident to a valid arrest, but also had the independent right to conduct a limited search of Grady's person for weapons and probable cause to search for Ecstasy.

As a preliminary matter, this Court notes that there is a conflict between Officer Hentges and Grady's version of what transpired when Grady was approached by Officer

Hentges and his subsequent search.  This Court finds both of the proposed scenarios of what occurred are plausible.  As such, it becomes an issue of credibility between Officer Hentges and Grady's testimony.  Having considered all of the evidence, this Court finds that Officer Hentges's testimony is more believable.  In addition, Officer Hentges's lacked any motivation to perjure himself to this Court, while Grady was motivated to provide testimony to negate a finding of guilt and avoid his incarceration.  See United States v. Gleason, 25 F.3d 605, 607 (8th Cir. 1994) (finding that an enforcement officer's testimony may be given more weight than that of a defendant who has "a great deal of self-interest in having the testimony suppressed.").

Having concluded that the events on September 6, 2005 occurred as described by Office Hentges, this Court rejects Grady's assertion that the conversation with Officer Hentges was not a consensual encounter, but rather a stop lacking reasonable suspicion.  See Def.'s Mem. at p. 5.  Although a person may not be seized without a reasonable suspicion of criminal activity, 'the [Fourth] Amendment is not triggered by a consensual encounter between an officer and private citizen.'"  United States v. Mendoza-Cepeda, 250 F.3d 626, 628 (8th Cir. 2001 (quoting United States v. Perez-Sosa, 164 F.3d 1082, 1084 (8th Cir. 1998)).  A law enforcement officer does not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.  See Florida v. Costick, 501 U.S. 429, 434 (1991); see also United States v. Barry, 394 F.3d 1070, 1074 (8th Cir. 2005) ("The Supreme Court has made it abundantly clear 'that mere police questioning does not constitute a seizure.'") (quoting Costick, supra).  A consensual encounter does not become an investigative

5

stop unless the questioning is so "intimidating, threatening or coercive that a reasonable person would not have believed himself to be free to leave." United States v. McKines, 933 F.2d 1412, 1419 (8th Cir. 1991) (en banc) (citation omitted).  Circumstances that might indicate when a stop becomes a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. White, 81 F.3d 775, 779 (8th Cir. 1996); see also United States v. Hathcock, 103 F.3d 715, 718-19 (8th Cir. 1997) (citation omitted)).

    None of the circumstances described above were present during Officer Hentges's initial encounter with Grady.  Officer Hentges was alone, with no weapons visible.  Further, there was no credible evidence presented that Officer Hentges verbally threatened Grady.  Officer Hentges did not say anything to Grady until Grady told him he had a gun clip in his pocket.  In addition, the contact between Officer Hentges and Grady occurred on a public street.  See Hathcock, 103 F.3d at 719 (noting that the contact between the police and defendant in public weighs against a finding that defendant was seized).  The police did not touch Grady until he admitted to having an ammunition clip and drugs on his person.  Although the fact that Officer Hentges windbreaker identified him as police is a factor to consider, standing alone, this factor does not convert a consensual encounter into a seizure.  See United States v. Dixon, 51 F.3d 1376, 1380 (8th Cir. 1995).  In sum, the facts before this Court indicate that the contact between Officer Hentges and Grady at the time Grady admitted to having contraband on his person was consensual and did not implicate the Fourth Amendment.

Once Grady admitted to having gun ammunition and drugs on his person, Officer Hentges had a reasonable suspicion that Grady was armed and dangerous. Consequently, Officer Hentges had the right to conduct a limited search of Grady's person to discover any weapons. See United States v. Bustos-Torres, 396 F.3d 935, 943 (8th Cir. 2005) ("'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a pat-down search 'to determine whether the person is in fact carrying a weapon.'") (quoting Terry v. Ohio, 392 U.S. 1, 24 (1968)); see also United States v. Roggeman, 279 F.3d 573, 577 (8th Cir.) cert. denied, 537 U.S. 879 (2002) (finding that the pat-down search was justified by an officer's reasonable suspicion that defendant might have been armed and dangerous); see also United States v. Robinson, 119 F.3d 663, 667 (8th Cir. 1997) ("The officer who conducted the pat-down search in the present case had a reasonable suspicion that appellant had just purchased drugs and that he might be armed and dangerous. He was justified, therefore, in conducting a pat-down search of appellant in order to protect himself from possible violence.").

In addition, an officer may have probable cause to arrest an individual when he admits he has contraband in his possession. See United States. v. Condelee, 915 F.2d 1206, 1210 (8th Cir.1990) (finding that an admission of having cocaine in a purse provided probable cause for an arrest); see also United States. v. Bell, 183 F.3d 746, 749 (8th Cir. 1999) (finding that defendant "admitted she was in fact carrying drugs, which gave the officers probable cause to arrest and to search her person.") (citations omitted). Here, Grady admitted to Officer Hentges that he had a gun clip and Ecstasy on his person, thereby providing Officer Hentges with probable cause to arrest Grady.

Finally, once under arrest, Officer Hentges could perform a pat-down search of Grady and seize any contraband discovered. See United States v. Adams, 346 F.3d 1165, 1170 (8th Cir. 2003) ("Because the officers had sufficient probable cause to arrest Adams without a warrant, it follows that the contraband seized from the pat-down search incident to his arrest is admissible.") (citing United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996)).

In sum, for all the reasons stated above, this Court recommends that Grady's motion to suppress evidence be denied.

### B.   Motion to Suppress Statements

It is Grady's position that his Mirandized statements given after his arrest should be suppressed because he had been illegally arrested prior to being searched, and consequently, any statements were the fruit if the earlier unlawful arrest. At the hearing, Grady's counsel stated that the motion to suppress statements was dependant on the success of Grady's motion to suppress evidence. Given that this Court has found that the arrest of Grady and the search were lawful, this Court finds that any statements given by Grady, after he was read his rights under Miranda, were not the fruits of the poisonous tree. As such, this Court recommends that Grady's Motion to Suppress Statements be denied.

### III. RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.   Defendant's Motion to Suppress Evidence Obtained as a Result of Searches and Seizure [Docket No. 14] be **DENIED**; and

2.   Defendant's Motion to Suppress Statements [Docket No. 15] be **DENIED**.

Dated:      November 29, 2005

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **December 9, 2005** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **December 9, 2005**.